1 | LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
2 | SHAWN A. WILLIAMS (213113)
100 Pine Street, Suite 2600
3 | San Francisco, CA  94111
Telephone:  415/288-4545
4 | 415/288-4534 (fax)
shawnw@lerachlaw.com
5 |     – and –
WILLIAM S. LERACH (68581)
6 | DARREN J. ROBBINS (168593)
TRAVIS E. DOWNS III (148274)
7 | 655 West Broadway, Suite 1900
San Diego, CA  92101
8 | Telephone:  619/231-1058
619/231-7423 (fax)
9 | billl@lerachlaw.com
darrenr@lerachlaw.com
10 | travisd@lerachlaw.com

11 | Attorneys for Plaintiff

12 | UNITED STATES DISTRICT COURT

13 | NORTHERN DISTRICT OF CALIFORNIA

14 | SAN JOSE DIVISION



15 | JOSEPH CARCO, Derivatively on Behalf of ) No.
MIPS TECHNOLOGIES, INC., )
16 | )
Plaintiff, ) VERIFIED SHAREHOLDER DERIVATIVE
17 | ) COMPLAINT FOR VIOLATION OF THE
) FEDERAL SECURITIES LAWS AND
18 | vs. ) STATE LAW CLAIMS FOR BREACH OF
) FIDUCIARY DUTY, ABUSE OF
19 | ANTHONY B. HOLBROOK, JOHN E. ) CONTROL, CONSTRUCTIVE FRAUD,
BOURGOIN, MERVIN S. KATO, KATE ) CORPORATE WASTE, UNJUST
20 | HUNT RUNDLE, BRAD HOLTZINGER, ) ENRICHMENT, GROSS
MARK TYNDALL, JACK BROWNE, ) MISMANAGEMENT, ACTION FOR
21 | SANDY CREIGHTON, KEVIN C. EICHLER, ) ACCOUNTING AND VIOLATIONS OF
G. MICHAEL UHLER, ROBERT R. HERB, ) CALIFORNIA CORPORATIONS CODE
22 | FRED M. GIBBONS, BENJAMIN A. )
HOROWITZ, KENNETH L. COLEMAN and )
23 | WILLIAM M. KELLY, )
)
24 | Defendants, )
)
25 |     – and – )
)
26 | MIPS TECHNOLOGIES, INC., a Delaware )
corporation, )
27 | )
Nominal Defendant. )
28 | _____ ) DEMAND FOR JURY TRIAL

ORIGINAL

1

**NATURE OF THE ACTION**

2     1.    This is a shareholder derivative action brought by a shareholder of MIPS

3 Technologies, Inc. ("MIPS" or the "Company") on behalf of the Company against its Board of

4 Directors and certain of its senior executives (collectively, "Defendants"). This action seeks to

5 remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse

6 of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement arising

7 out of a scheme and wrongful course of business whereby Defendants allowed senior MIPS insiders

8 to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of

9 grant dates associated with hundreds of thousands of stock options granted to MIPS insiders. Each

10 of the Defendants also participated in the concealment of the backdating option scheme complained

11 of herein and/or refused to take advantage of the Company's legal rights to require these senior

12 insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and

13 proceeds diverted to them since 1998.

14     2.    Between fiscal 1998 and 2005, Defendants also caused MIPS to file false and

15 misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy

16 Statements filed with the SEC which stated that the options granted by MIPS carried with them an

17 exercise price that was ***not less than*** the fair market value of MIPS stock on the date of grant and

18 issuance.

19     3.    In fact, Defendants were aware that the practices employed by the Board allowed the

20 stock option grants to be ***backdated*** to dates when the Company's shares were trading at or near the

21 lowest price for that relevant period. By August 2006, Defendants' backdating scheme had yielded

22 stock option grants to the Company's executive officers worth millions of dollars, which contributed

23 to Defendants' ability to sell over $16.9 million worth of MIPS stock.

24     4.    MIPS's financial results as reported and filed with the SEC were false. Defendants'

25 misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934

26 (the "Exchange Act"), as well as California and Delaware law. By authorizing and/or acquiescing in

27 the stock option backdating scheme, Defendants: (i) caused MIPS to issue false statements; (ii)

28

1  diverted hundreds of millions of dollars of corporate assets to senior MIPS executives; and (iii)

2  subjected MIPS to potential liability from regulators, including the SEC and the IRS.

3       5.     Defendants' gross mismanagement and malfeasance over the past decade has exposed

4  MIPS and its senior executives to criminal and civil liability for issuing false and misleading

5  financial statements.  Specifically, Defendants caused or allowed MIPS to issue statements that

6  failed to disclose or misstated the following: (i) that the Company had problems with its internal

7  controls that prevented it from issuing accurate financial reports and projections; (ii) that because of

8  improperly recorded stock-based compensation expenses, the Company's financial results violated

9  Generally Accepted Accounting Principles ("GAAP"); and (iii) that the Company's public

10  disclosures presented an inflated view of MIPS's earnings and earnings per share.

11       6.     Defendants' malfeasance and mismanagement during the relevant period has wreaked

12  hundreds of millions of dollars of damages on MIPS.  The Company's senior executives were

13  incentivized to over-pay themselves, to profit from their misconduct by cashing in on under-priced

14  stock options and to issue false financial statements to cover up their misdeeds.  Defendants'

15  breaches of fiduciary duties in the administration of the Company's stock option plans so polluted

16  the plans with grant date manipulations so as to void all grants made pursuant to the plans.  The

17  Company has now been mentioned as one of several companies likely to have manipulated options.

18  Meanwhile, certain of the Defendants and former officers, who received under-priced stock options

19  and/or knew material non-public information regarding MIPS's internal control problems, abused

20  their fiduciary relationship with the Company by selling over $16.9 million worth of their personally

21  held shares at artificially inflated prices during the relevant period.  This action seeks recovery for

22  MIPS against these faithless fiduciaries, as MIPS's Board of Directors, as currently composed, is

23  simply unable or unwilling to do so.

24                            **INTRADISTRICT ASSIGNMENT**

25       7.     A substantial part of the events or omissions which give rise to the claims in this

26  action occurred in the county of Santa Clara and as such this action is properly assigned to the San

27  Jose division of this Court.

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS    - 2 -

**JURISDICTION AND VENUE**

8.      The claims asserted herein arise under §14(a) of the Exchange Act, 15 U.S.C. §78n(a), and under California and Delaware law for breach of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement.  In connection with the acts, conduct and other wrongs complained of herein, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail and the facilities of a national securities market.

9.      This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1331.  This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

10.     This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

11.     Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1391(b).  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.  MIPS is located in and conducts its business in this District.  Further, Defendants conduct business in this District, and certain of the Defendants are citizens of California and reside in this District.

**PARTIES**

12.     Plaintiff Joseph Carco is, and at all relevant times was, a shareholder of nominal defendant MIPS.

13.     Nominal party MIPS is a Delaware corporation with its principal executive offices located at 1225 Charleston Road, Mountain View, California.

14.     Defendant Anthony B. Holbrook ("Holbrook") has served as Chairman of the Board of Directors of MIPS since August 2003 and has served as a director since July 1998.  Because of Holbrook's position, he knew the adverse non-public information about the business of MIPS, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees,

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 3 -

1    attendance at management meetings and via reports and other information provided to him in

2    connection therewith.  During the relevant period, Holbrook participated in the issuance of false

3    and/or misleading statements, including the preparation of the false and/or misleading press releases

4    and SEC filings.  As a member of the Audit and Corporate Governance Committee, defendant

5    Holbrook caused or allowed the dissemination of the improper public statements described herein.

6        15.    Defendant John E. Bourgoin ("Bourgoin") has served as President of MIPS since

7    September 1996, as a director of the Company since May 1997 and as Chief Executive Officer

8    ("CEO") since February 1998.  Because of Bourgoin's positions, he knew the adverse non-public

9    information about the business of MIPS, as well as its finances, markets and present and future

10   business prospects, via access to internal corporate documents, conversations and connections with

11   other corporate officers and employees, attendance at management and Board meetings and

12   committees thereof and via reports and other information provided to him in connection therewith.

13   During the relevant period, Bourgoin participated in the issuance of false and/or misleading

14   statements, including the preparation of the false and/or misleading press releases and SEC filings.

15   Based on his knowledge of material non-public information regarding the Company, defendant

16   Bourgoin violated Cal. Corp. Code §§25402 and 25502.5 by selling 220,000 shares of MIPS stock

17   for proceeds of $7.5 million during the relevant period.

18       16.    Defendant Mervin S. Kato ("Kato") has served as Vice President of Finance of MIPS

19   since May 2001 and as Chief Financial Officer ("CFO") since January 2006.  Previously, Kato

20   served as Corporate Controller from May 1998 until his promotion to his current position.  Because

21   of Kato's positions, he knew the adverse non-public information about the business of MIPS, as well

22   as its finances, markets and present and future business prospects, via access to internal corporate

23   documents, conversations and connections with other corporate officers and employees, attendance

24   at management meetings and via reports and other information provided to him in connection

25   therewith.  Defendant Kato, by his specialized financial expertise, was in a unique position to

26   understand the business of MIPS, as well as its finances, markets and present and future business

27   prospects.  During the relevant period, Kato participated in the issuance of false and/or misleading

28   statements, including the preparation of the false and/or misleading press releases and SEC filings.

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 4 -

1   Based on his knowledge of material non-public information regarding the Company, defendant Kato

2   violated Cal. Corp. Code §§25402 and 25502.5 by selling 10,000 shares of MIPS stock for proceeds

3   of $550,000 during the relevant period.

4         17.     Defendant Kate Hunt Rundle ("Rundle") has served as Vice President and General

5   Counsel of MIPS since February 2006.

6         18.     Defendant Brad Holtzinger ("Holtzinger") has been Vice President, Worldwide Sales

7   since November 2005.  Previously, Holtzinger served as Director of Systems Solutions of MIPS

8   from 2001 to 2002 and as Vice President, Sales from 2002 to 2005.  Because of Holtzinger's

9   positions, he knew the adverse non-public information about the business of MIPS, as well as its

10  finances, markets and present and future business prospects, via access to internal corporate

11  documents, conversations and connections with other corporate officers and employees, attendance

12  at management meetings and via reports and other information provided to him in connection

13  therewith.  During the relevant period, Holtzinger participated in the issuance of false and/or

14  misleading statements, including the preparation of the false and/or misleading press releases and

15  SEC filings.

16        19.     Defendant Mark Tyndall ("Tyndall") has served as Vice President, Business

17  Development and Corporate Relations of MIPS since June 2006.

18        20.     Defendant Jack Browne ("Browne") has served as Vice President of Worldwide Sales

19  of MIPS since August 2002.  Previously, Browne served as Director of Market Development of the

20  Company from December 2001 to August 2002.  Because of Browne's positions, he knew the

21  adverse non-public information about the business of MIPS, as well as its finances, markets and

22  present and future business prospects, via access to internal corporate documents, conversations and

23  connections with other corporate officers and employees, attendance at management meetings and

24  via reports and other information provided to him in connection therewith.  During the relevant

25  period, Browne participated in the issuance of false and/or misleading statements, including the

26  preparation of the false and/or misleading press releases and SEC filings.  Based on his knowledge

27  of material non-public information regarding the Company, defendant Browne violated Cal. Corp.

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS    - 5 -

1  Code §§25402 and 25502.5 by selling 155,977 shares of MIPS stock for proceeds of $1.1 million

2  during the relevant period.

3       21.    Defendant Sandy Creighton ("Creighton") has served as Vice President, Human

4  Resources and Corporate Administration of MIPS since February 2006. Previously, Creighton

5  served as Vice President, General Counsel and Corporate Secretary for MIPS from June 1998 until

6  February 2006. Because of Creighton's positions, she knew the adverse non-public information

7  about the business of MIPS, as well as its finances, markets and present and future business

8  prospects, via access to internal corporate documents, conversations and connections with other

9  corporate officers and employees, attendance at management meetings and via reports and other

10  information provided to her in connection therewith. During the relevant period, Creighton

11  participated in the issuance of false and/or misleading statements, including the preparation of the

12  false and/or misleading press releases and SEC filings.

13       22.    Defendant Kevin C. Eichler ("Eichler") had been CFO and Vice President, Finance of

14  MIPS from May 1998 until January 2006. Because of Eichler's positions, he knew the adverse non-

15  public information about the business of MIPS, as well as its finances, markets and present and

16  future business prospects, via access to internal corporate documents, conversations and connections

17  with other corporate officers and employees, attendance at management meetings and via reports and

18  other information provided to him in connection therewith. Defendant Eichler, by his specialized

19  financial expertise, was in a unique position to understand the business of MIPS, as well as its

20  finances, markets and present and future business prospects. During the relevant period, Eichler

21  participated in the issuance of false and/or misleading statements, including the preparation of the

22  false and/or misleading press releases and SEC filings. Based on his knowledge of material non-

23  public information regarding the Company, defendant Eichler violated Cal. Corp. Code §§25402 and

24  25502.5 by selling 236,700 shares of MIPS stock for proceeds of $6.1 million during the relevant

25  period.

26       23.    Defendant G. Michael Uhler ("Uhler") has served as Chief Technology Officer since

27  May 2003. Previously, Uhler served in various engineering management positions from 1994 to

28  2001, and as Vice President, Architecture and Software Products from October 2001 to May 2003.

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS    - 6 -

1   Because of Uhler's positions, he knew the adverse non-public information about the business of

2   MIPS, as well as its finances, markets and present and future business prospects, via access to

3   internal corporate documents, conversations and connections with other corporate officers and

4   employees, attendance at management meetings and via reports and other information provided to

5   him in connection therewith. During the relevant period, Uhler participated in the issuance of false

6   and/or misleading statements, including the preparation of the false and/or misleading press releases

7   and SEC filings. Based on his knowledge of material non-public information regarding the

8   Company, defendant Browne violated Cal. Corp. Code §§25402 and 25502.5 by selling 139,409

9   shares of MIPS stock for proceeds of $1.09 million during the relevant period.

10       24.     Defendant Robert R. Herb ("Herb") has been a director of MIPS since January 2005.

11   Because of Herb's position, he knew the adverse non-public information about the business of

12   MIPS, as well as its finances, markets and present and future business prospects, via access to

13   internal corporate documents, conversations and connections with other corporate officers and

14   employees, attendance at Board meetings and committees thereof and via reports and other

15   information provided to him in connection therewith. As a member of the Compensation and

16   Nominating Committee, defendant Herb controlled the other Defendants' stock option awards.

17   During the relevant period, Herb participated in the issuance of false and/or misleading statements,

18   including the preparation of the false and/or misleading press releases and SEC filings.

19       25.     Defendant Fred M. Gibbons ("Gibbons") has been a director of MIPS since 1998.

20   Because of Gibbons' position, he knew the adverse non-public information about the business of

21   MIPS, as well as its finances, markets and present and future business prospects, via access to

22   internal corporate documents, conversations and connections with other corporate officers and

23   employees, attendance at Board meetings and committees thereof and via reports and other

24   information provided to him in connection therewith. During the relevant period, Gibbons

25   participated in the issuance of false and/or misleading statements, including the preparation of the

26   false and/or misleading press releases and SEC filings. As a member of the Compensation and

27   Nominating Committee, defendant Gibbons controlled the other Defendants' stock option awards.

28   As a member of the Audit and Corporate Governance Committee, defendant Gibbons caused or

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS     - 7 -

1   allowed the dissemination of the improper public statements described herein.   Based on his

2   knowledge of material non-public information regarding the Company, defendant Gibbons violated

3   Cal. Corp. Code §§25402 and 25502.5 by selling 10,000 shares of MIPS stock for proceeds of

4   $390,600 during the relevant period.

5       26.   Defendant Benjamin A. Horowitz ("Horowitz") has been a director of MIPS since

6   2001.   Because of Horowitz's position, he knew the adverse non-public information about the

7   business of MIPS, as well as its finances, markets and present and future business prospects, via

8   access to internal corporate documents, conversations and connections with other corporate officers

9   and employees, attendance at Board meetings and committees thereof and via reports and other

10  information provided to him in connection therewith.   During the relevant period, Horowitz

11  participated in the issuance of false and/or misleading statements, including the preparation of the

12  false and/or misleading press releases and SEC filings.   As a member of the Compensation and

13  Nominating Committee, defendant Horowitz controlled the other Defendants' stock option awards.

14      27.   Defendant Kenneth L. Coleman ("Coleman") has been a director of MIPS since 1998.

15  Because of Coleman's position, he knew the adverse non-public information about the business of

16  MIPS, as well as its finances, markets and present and future business prospects, via access to

17  internal corporate documents, conversations and connections with other corporate officers and

18  employees, attendance at Board meetings and committees thereof and via reports and other

19  information provided to him in connection therewith.   During the relevant period, Coleman

20  participated in the issuance of false and/or misleading statements, including the preparation of the

21  false and/or misleading press releases and SEC filings.   As the Chairperson of the Compensation and

22  Nominating Committee, defendant Coleman controlled the other Defendants' stock option awards.

23      28.   Defendant William M. Kelly ("Kelly") has been a director of MIPS since 1998.

24  Because of Kelly's position, he knew the adverse non-public information about the business of

25  MIPS, as well as its finances, markets and present and future business prospects, via access to

26  internal corporate documents, conversations and connections with other corporate officers and

27  employees, attendance at Board meetings and committees thereof and via reports and other

28  information provided to him in connection therewith.   During the relevant period, Kelly participated

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        - 8 -

1   in the issuance of false and/or misleading statements, including the preparation of the false and/or

2   misleading press releases and SEC filings. As the Chairperson of the Audit and Corporate

3   Governance Committee, defendant Kelly caused or allowed the dissemination of the improper public

4   statements described herein.

5         29.    The defendants identified in ¶¶14-15 and 24-28 are referred to herein as the "Director

6   Defendants." The defendants identified in ¶¶15-23 are referred to herein as the "Officer

7   Defendants." The defendants identified in ¶¶15-16, 20, 22-23 and 25 are referred to herein as the

8   "Insider Selling Defendants."

9                             **DEFENDANTS' DUTIES**

10        30.    Each officer and director of MIPS named herein owed the Company and MIPS

11   shareholders the duty to exercise a high degree of care, loyalty and diligence in the management and

12   administration of the affairs of the Company, as well as in the use and preservation of its property

13   and assets. The conduct of MIPS's directors and officers complained of herein involves knowing,

14   intentional and culpable violations of their obligations as officers and directors of MIPS. Further,

15   the misconduct of MIPS's officers has been ratified by MIPS's Board, which has failed to take any

16   legal action on behalf of the Company against them.

17        31.    By reason of their positions as officers, directors and fiduciaries of MIPS and because

18   of their ability to control the business and corporate affairs of the Company, the Defendants owed

19   MIPS and its shareholders fiduciary obligations of candor, trust, loyalty and care, and were required

20   to use their ability to control and manage MIPS in a fair, just, honest and equitable manner, and to

21   act in furtherance of the best interests of MIPS and its shareholders so as to benefit all shareholders

22   equally and not in furtherance of their personal interest or benefit. In addition, as officers and/or

23   directors of a publicly held company, the Defendants had a duty to refrain from utilizing their control

24   over MIPS to divert assets to themselves via improper and/or unlawful practices. Defendants also

25   had a duty to promptly disseminate accurate and truthful information with respect to the Company's

26   operations, earnings and compensation practices.

27        32.    Because of their positions of control and authority as directors or officers of MIPS,

28   each of the Defendants was able to and did, directly and indirectly, control the wrongful acts

1   complained of herein.  As to the Director Defendants, these acts include: (i) agreement to and/or

2   acquiescence in Defendants' option backdating scheme; (ii) willingness to cause MIPS to

3   disseminate false Proxy Statements for 1998-2005, which Proxy Statements failed to disclose

4   Defendants' option backdating scheme and omitted the fact that executive officers were allowed to

5   backdate their stock option grants in order to manipulate the strike price of the stock options they

6   received.  Because of their positions with MIPS, each of the Defendants was aware of these

7   wrongful acts, had access to adverse non-public information and was required to disclose these facts

8   promptly and accurately to MIPS shareholders and the financial markets but failed to do so.

9          33.     Between 1998 and 2005, Defendants repeated in each Proxy Statement that the stock

10   option grants made during that period carried an exercise price that was not less than the fair market

11   value of MIPS stock on the date granted, as calculated by the public trading price of the stock at the

12   market's close on that date.  However, Defendants concealed until August 2006 that the stock option

13   grants were repeatedly and consciously ***backdated*** to ensure that the strike price associated with the

14   option grants was at or near the lowest trading price for that fiscal period.  Due to Defendants'

15   breach of their fiduciary duty in the administration of the stock option plans, plaintiff seeks to have

16   the directors' and officers' plans voided and gains from those plans returned to the Company.  In the

17   alternative, plaintiff seeks to have all of the unexercised options granted to defendants between 1998

18   and 2002 cancelled, the financial gains obtained via the exercise of such options returned to the

19   Company and to have Defendants revise the Company's financial statements to reflect the truth

20   concerning these option grants.

21          34.     To discharge their duties, the directors of MIPS were required to exercise reasonable

22   and prudent supervision over the management, policies, practices and controls of the business and

23   financial affairs of MIPS.  By virtue of such duties, the officers and directors of MIPS were required,

24   among other things, to:

25          (a)     manage, conduct, supervise and direct the business affairs of MIPS in

26   accordance with all applicable law (including federal and state laws, government rules and

27   regulations and the charter and bylaws of MIPS);

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 10 -

       (b)     neither engage in self-dealing nor knowingly permit any officer, director or employee of MIPS to engage in self-dealing;

       (c)     neither violate nor knowingly permit any officer, director or employee of MIPS to violate applicable laws, rules and regulations;

       (d)     remain informed as to the status of MIPS's operations, including its practices in relation to the cost of allowing the pervasive backdating and improperly accounting for such, and upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with the U.S. federal securities laws and their duty of candor to the Company's shareholders;

       (e)     prudently protect the Company's assets, including taking all necessary steps to recover corporate assets (cash, stock options) improperly paid to Company executives and directors together with the related costs (professional fees) proximately caused by the illegal conduct described herein;

       (f)     establish and maintain systematic and accurate records and reports of the business and affairs of MIPS and procedures for the reporting of the business and affairs to the Board of Directors and to periodically investigate, or cause independent investigation to be made of, said reports and records;

       (g)     maintain and implement an adequate, functioning system of internal legal, financial and accounting controls, such that MIPS's financial statements – including its expenses, accounting for stock option grants and other financial information – would be accurate and the actions of its directors would be in accordance with all applicable laws;

       (h)     exercise control and supervision over the public statements to the securities markets and trading in MIPS stock by the officers and employees of MIPS; and

       (i)     supervise the preparation and filing of any financial reports or other information required by law from MIPS and to examine and evaluate any reports of examinations, audits or other financial information concerning the financial affairs of MIPS and to make full and

1   accurate disclosure of all material facts concerning, *inter alia,* each of the subjects and duties set

2   forth above.

3        35.     Each Defendant, by virtue of his or her position as a director and/or officer, owed to

4   the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of

5   due care and diligence in the management and administration of the affairs of the Company, as well

6   as in the use and preservation of its property and assets. The conduct of the Defendants complained

7   of herein involves a knowing and culpable violation of their obligations as directors and/or officers

8   of MIPS, the absence of good faith on their part, and a reckless disregard for their duties to the

9   Company and its shareholders which Defendants were aware or should have been aware posed a risk

10  of serious injury to the Company. The conduct of the Defendants who were also officers and/or

11  directors of the Company during the relevant period has been ratified by the Director Defendants

12  who comprised MIPS's entire Board during the relevant period.

13       36.     Defendants breached their duties of loyalty and good faith by allowing or by

14  themselves causing the Company to misrepresent its financial results and prospects, as detailed

15  herein *infra*, and by failing to prevent the Defendants from taking such illegal actions. As a result,

16  MIPS has expended and will continue to expend significant sums of money. Such expenditures

17  include, but are not limited to:

18              (a)     improvidently paid executive compensation;

19              (b)     increased capital costs as a result of the loss of market capitalization and the

20  Company's damaged reputation in the investment community;

21              (c)     costs incurred to carry out internal investigations and to prepare and file

22  restated financial statements, including legal fees paid to outside counsel; and

23              (d)     incurring possible IRS penalties for improperly reporting compensation.

24       37.     These actions have irreparably damaged MIPS's corporate image and goodwill. For

25  at least the foreseeable future, MIPS will suffer from what is known as the "liar's discount," a term

26  applied to the stocks of companies who have been implicated in illegal behavior and have misled the

27  investing public, such that MIPS's ability to raise equity capital or debt on favorable terms in the

28  future is now impaired.

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 12 -

## AIDING AND ABETTING AND CONCERTED ACTION

38.     In committing the wrongful acts alleged herein, Defendants have pursued or joined in the pursuit of a common course of conduct and acted in concert with one another in furtherance of their common plan.

39.     During all times relevant hereto, Defendants collectively and individually initiated a course of conduct which was designed to and did: (i) conceal the fact that the Company was allowing its directors and senior officers to divert hundreds of millions of dollars to MIPS insiders and directors and causing MIPS to misrepresent its financial results; (ii) maintain Defendants' executive and directorial positions at MIPS and the profits, power and prestige which Defendants enjoyed as a result of these positions; (iii) deceive the investing public, including shareholders of MIPS, regarding Defendants' compensation practices and MIPS's financial performance.

40.     The purpose and effect of Defendants' common course of conduct was, among other things, to disguise Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, corporate waste and unjust enrichment, to conceal adverse information concerning the Company's operation and financial condition and to artificially inflate the price of MIPS common stock so they could dispose of millions of dollars of their own MIPS stock, and enhance their executive and directorial positions and receive the substantial compensation they obtained as a result thereof.

41.     Defendants accomplished their common enterprise and/or common course of conduct by causing the Company to purposefully and/or recklessly engage in the option backdating scheme alleged herein and misrepresent MIPS's financial results. Each of the Defendants was a direct, necessary, and substantial participant in the common enterprise and/or common course of conduct complained of herein.

42.     Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

**BACKGROUND**

43.     MIPS develops embedded processors and related intellectual property for use in markets, such as digital consumer, wired and wireless communications, including broadband access, office automation, security and automotive markets.  The Company has developed standards for both 32-bit and 64-bit computing.  It licenses its industry-standard MIPS32 and MIPS64 instruction-set architectures, application specific extensions, core designs and other related intellectual property to semiconductor companies and system original equipment manufacturers.

44.     Throughout the relevant period, Defendants caused MIPS to grant them millions of stock options permitting them to buy MIPS stock for pennies on the dollar which they could in turn sell as the Company's stock price increased.  A stock option gives the holder the right to buy a stock at a certain price in the future.  Typically, companies set that price at the same time their directors approve an option grant, with an exercise price – also known as the "strike price" – usually set at the closing price of the stock that day, the closing price of the night before or by computing an average of the high and low prices on the day of the vote.

45.     However, many of the millions of options granted to MIPS's executives had a hidden, valuable component:  they were misdated, often making them even more significantly valuable.  The misdated stock option grants fell largely into three categories: (i) "look back" grants, in which the date of the grant was picked retroactively (*e.g.*, a decision in February to pick a January date); (ii) "wait and see" grants, in which a grant date was selected, but the decision was finalized – and sometimes changed – at a later date (*e.g.*, a decision on January 1 to issue a grant on January 15, but there is a period after January 15 in which the grantor waits to see if a more advantageous price occurs and, if one does, uses that later date instead); and (iii) grants where there was a failure to complete the option grant process by the date of the grant (*e.g.*, where there is a decision to issue a grant as of a certain date, but after that date there are changes in the grantees or amounts to grantees, and although the work is not complete on those grants as of the stated grant date, that date is nonetheless used).

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 14 -

1

## STOCK OPTION GRANTS

2        46.     Certain of MIPS's manipulative stock option grants are described below:

3   **1999 Option Grants**

4        47.     Defendants dated all of MIPS's 1999 option grants as of August 6, 1999 at $34.31 per

5   share – the low of the month.  The stock traded as high as $40.12 per share in August 1999.

6   Defendants Bourgoin, Eichler and Creighton received 150,000, 55,000 and 55,000 options,

7   respectively, at this $34.31 exercise price.

8   **2000 Option Grants**

9        48.     Defendants dated most of MIPS's 2000 option grants as of July 11, 2000 at $36.50

10  per share – the low of the month.  The stock traded as high as $53.44 per share in July 2000.

11  Defendants Bourgoin, Creighton and Eichler received 200,000, 70,000 and 70,000 options,

12  respectively, at this $36.50 exercise price.

13       49.     Below are several of MIPS's grants which occurred right before significant stock

14  price increases:

15

16



**Mips Technologies**

**July 8, 1999 - September 10, 1999**

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        - 15 -



**Mips Technologies**
**June 9, 2000 - August 18, 2000**

50.     Complicating matters and magnifying the harm to MIPS, during the relevant period, MIPS's internal controls and accounting controls with respect to option grants and exercises, and its financial reporting, were grossly inadequate.   The weaknesses allowed dates of both grants and exercises to be manipulated and the Company's executive compensation expenses to be materially understated.  They also allowed grant dates to be changed to provide executives with more favorably priced options, in effect augmenting their compensation, with no benefit running to the Company.

51.     Specifically, in many instances the reported dates MIPS stock options were granted differed from the dates on which the options appear to have been actually granted.  The practice applied to the overwhelming majority of stock option grants made during the relevant period, which allowed executives and employees to make more money on their options because it set a lower "strike price" at which the options could be exercised, allowing employees to take larger profits when the stock price later rose. ***In almost every case of misdating, the price of MIPS shares on the***

1    *reported option-grant date was lower than the share price on the actual day the options were*
2    *issued.*

3        52.    Through their fiduciary duties of care, good faith and loyalty, Defendants owed to
4    MIPS a duty to ensure that the Company's financial reporting fairly presented, in all material
5    respects, the operations and financial condition of the Company.  In order to adequately carry out
6    these duties, it is necessary for the Defendants to know and understand the material non-public
7    information to be either disclosed or omitted from the Company's public statements. This material
8    non-public information included the problems MIPS faced because of its deficient internal controls.
9    Furthermore, defendants who were members of the Audit Committee during the relevant period had
10   a special duty to know and understand this material information as set out in the Audit Committee's
11   charter, which provides that the Audit Committee is responsible for reviewing, in conjunction with
12   management, the Company's policies generally with respect to the Company's earnings press
13   releases and with respect to financial information and earnings guidance provided to analysts and
14   rating agencies. Defendants Bourgoin, Kato, Rundle, Holtzinger, Browne, Creighton, Tyndall and
15   Uhler as officers of MIPS, had ample opportunity to discuss this material information with their
16   fellow officers at management meetings and via internal corporate documents and reports.
17   Moreover, defendants who were directors of MIPS had ample opportunity to discuss this material
18   information with fellow directors at any of the scores of Board meetings that occurred during the
19   relevant period as well as at committee meetings of the Board.  Despite these duties, Defendants
20   negligently, recklessly, and/or intentionally caused or allowed, by their actions or inactions, the
21   misleading statements to be disseminated by MIPS to the investing public and the Company's
22   shareholders during the relevant period.

23       53.    Specifically, since 1998, Defendants have caused MIPS to report false and misleading
24   fiscal and quarterly financial results which materially understated its compensation expenses and
25   thus overstated its earnings (or understated its losses) as follows:

26

27

28

| Fiscal Year[1] | Reported Net Income (Loss) (in Millions) | Reported Diluted Earnings (Loss) Per Share on Continuing Operations |
|---|---|---|
| 1998 | $0.38 | $0.08 |
| 1999 | $22.66 | $0.58 |
| 2000 | $27.11 | $0.68 |
| 2001 | $19.06 | $0.49 |
| 2002 | $(9.39) | $(0.20) |
| 2003 | $(28.91) | $(0.54) |
| 2004 | $(1.53) | $0.01 |
| 2005 | $14.91 | $0.34 |
| 2006 | $5.76 | $0.14 |

54.     Moreover, throughout the relevant period certain of the Defendants and former officers exercised many of these stock options contributing to their ability to sell over $16.9 million worth of MIPS stock they obtained often by cashing in under-priced stock options:

| Defendant | Dates of Sales | Shares Sold | Proceeds Received |
|---|---|---|---|
| Eichler | 07/28/99–01/25/05 | 236,700 | $6,134,910 |
| Bourgoin | 07/23/99–01/27/05 | 220,000 | $7,590,190 |
| Kato | 08/22/00 | 10,000 | $550,000 |
| Uhler | 07/30/03–08/22/06 | 139,409 | $1,098,869 |
| Browne | 02/25/03–02/08/06 | 155,977 | $1,170,258 |
| Gibbons | 08/12/99 | 10,000 | $390,600 |
| | | | |
| **TOTAL** | | **772,806** | **$16,934,827** |

55.     On August 30, 2006, the Company announced that it would be delaying the filing of its Form 10-K for fiscal 2006 due to an ongoing internal investigation into the Company's past practices related to stock-option grants to officers and directors.

56.     In effect, during the relevant period, the Defendants caused MIPS's shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial statements, business and prospects. Specifically, Defendants caused or allowed MIPS to issue statements that failed to disclose or misstated the following:  (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses

---

[1]     MIPS's fiscal year ends June 30.

1    the Company's financial results violated GAAP; and (iii) that the Company's public disclosures

2    presented an inflated view of MIPS's earnings and earnings per share.

### DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

4    57.    Plaintiff brings this action derivatively in the right and for the benefit of MIPS to

5    redress injuries suffered and to be suffered by MIPS as a direct result of Defendants' violations of

6    state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross

7    mismanagement, corporate waste and unjust enrichment, as well as the aiding and abetting thereof,

8    by the Defendants. This is not a collusive action to confer jurisdiction on this Court which it would

9    not otherwise have.

10    58.    Plaintiff will adequately and fairly represent the interests of MIPS and its

11    shareholders in enforcing and prosecuting its rights.

12    59.    Plaintiff is an owner of MIPS stock and was an owner of MIPS stock during times

13    relevant to Defendants' illegal and wrongful course of conduct alleged herein.

14    60.    Based upon the facts set forth throughout this Complaint, applicable law and the

15    longstanding rule that equity does not compel a useless and futile act, a pre-filing demand upon the

16    MIPS Board of Directors to institute this action against the officers and members of the MIPS Board

17    of Directors is excused as futile. A pre-filing demand would be a useless and futile act because:

18    (a)    The members of MIPS's Board have demonstrated their unwillingness and/or

19    inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their

20    fellow directors and allies in the top ranks of the corporation for the violations of law complained of

21    herein. These are people they have developed professional relationships with, who are their friends

22    and with whom they have entangling financial alliances, interests and dependencies, and therefore,

23    they are not able to and will not vigorously prosecute any such action.

24    (b)    The MIPS Board of Directors and senior management participated in,

25    approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to

26    conceal or disguise those wrongs from MIPS's stockholders or recklessly and/or negligently

27    disregarded the wrongs complained of herein, and are therefore not disinterested parties. As a result

28    of their access to and review of internal corporate documents, or conversations and connections with

1    other corporate officers, employees, and directors and attendance at management and/or Board

2    meetings, each of the Defendants knew the adverse non-public information regarding the improper

3    stock option grants and financial reporting. Pursuant to their specific duties as Board members, the

4    Director Defendants are charged with the management of the Company and to conduct its business

5    affairs. Defendants breached the fiduciary duties that they owed to MIPS and its shareholders in that

6    they failed to prevent and correct the improper stock option granting and financial reporting. Certain

7    directors are also dominated and controlled by other directors and cannot act independently of them.

8    Thus, the MIPS Board cannot exercise independent objective judgment in deciding whether to bring

9    this action or whether to vigorously prosecute this action because each of its members participated

10   personally in the wrongdoing or are dependent upon other Defendants who did.

11           (c)     The acts complained of constitute violations of the fiduciary duties owed by

12   MIPS's officers and directors and these acts are incapable of ratification.

13           (d)     The members of MIPS's Board have benefited, and will continue to benefit,

14   from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of

15   control and the perquisites derived thereof, and are incapable of exercising independent objective

16   judgment in deciding whether to bring this action.

17           (e)     Any suit by the current directors of MIPS to remedy these wrongs would

18   likely further expose the liability of Defendants under the federal securities laws, which could result

19   in additional civil and/or criminal actions being filed against one or more of the Defendants, thus,

20   they are hopelessly conflicted in making any supposedly independent determination whether to sue

21   themselves.

22           (f)     MIPS has been and will continue to be exposed to significant losses due to the

23   wrongdoing complained of herein, yet the current Board has not filed any lawsuits against itself or

24   others who were responsible for that wrongful conduct to attempt to recover for MIPS any part of the

25   damages MIPS suffered and will suffer thereby.

26           (g)     In order to properly prosecute this lawsuit, it would be necessary for the

27   directors to sue themselves and the other Defendants, requiring them to expose themselves and their

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS    - 20 -

1   comrades to millions of dollars in potential civil liability and criminal sanctions, or IRS penalties.

2   This they will not do.

3          (h)    MIPS's current and past officers and directors are protected against personal

4   liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in this

5   Complaint by directors' and officers' liability insurance which they caused the Company to purchase

6   for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of MIPS.

7   However, due to certain changes in the language of directors' and officers' liability insurance

8   policies in the past few years, the directors' and officers' liability insurance policies covering the

9   Defendants in this case contain provisions which eliminate coverage for any action brought directly

10   by MIPS against these Defendants, known as, *inter alia,* the "insured versus insured exclusion." As

11   a result, if these directors were to sue themselves or certain of the officers of MIPS, there would be

12   no directors' and officers' insurance protection and thus, this is a further reason why they will not

13   bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such

14   insurance coverage exists and will provide a basis for the Company to effectuate a recovery.

15          (i)    In order to bring this action for breaching their fiduciary duties, the members

16   of the MIPS Board would have been required to sue themselves and/or their fellow directors and

17   allies in the top ranks of the Company, who are their personal friends and with whom they have

18   entangling financial alliances, interests and dependencies, which they would not do.

19       61.    Plaintiff has not made any demand on shareholders of MIPS to institute this action

20   since such demand would be a futile and useless act for the following reasons:

21          (a)    MIPS is a publicly traded company with approximately 43 million shares

22   outstanding, and thousands of shareholders;

23          (b)    Making demand on such a number of shareholders would be impossible for

24   plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

25          (c)    Making demand on all shareholders would force plaintiff to incur huge

26   expenses, assuming all shareholders could be individually identified.

27

28

## THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT ON MIPS'S FINANCIAL STATEMENTS

**The Fiscal 1998 Form 10-K**

On or about September 24, 1998, the Company filed its fiscal 1998 Form 10-K with the SEC. The fiscal 1998 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1998 Form 10-K included MIPS's fiscal 1998 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, MIPS's compensation expense was understated and its net earnings were overstated.

**The Fiscal 1999 Form 10-K**

62.    On or about September 21, 1999, the Company filed its fiscal 1999 Form 10-K with the SEC. The fiscal 1999 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1999 Form 10-K included MIPS's fiscal 1999 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, MIPS's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2000 Form 10-K405**

63.    On or about September 22, 2000, the Company filed its fiscal 2000 Form 10-K405 with the SEC. The fiscal 2000 Form 10-K405 was simultaneously distributed to shareholders and the public. The fiscal 2000 Form 10-K405 included MIPS's fiscal 2000 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, MIPS's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2001 Form 10-K405**

64.    On or about September 24, 2001, the Company filed its fiscal 2001 Form 10-K405 with the SEC. The fiscal 2001 Form 10-K405 was simultaneously distributed to shareholders and the public. The fiscal 2001 Form 10-K405 included MIPS's fiscal 2001 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper

1   accounting for the backdated stock options.  As a result, MIPS's compensation expense was

2   understated and its net earnings were overstated.

3   **The Fiscal 2002 Form 10-K**

4       65.    On or about September 25, 2002, the Company filed its fiscal 2002 Form 10-K with

5   the SEC.  The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the public.

6   The fiscal 2002 Form 10-K included MIPS's fiscal 2002 financial statements which were materially

7   false and misleading and presented in violation of GAAP, due to improper accounting for the

8   backdated stock options.  As a result, MIPS's compensation expense was understated and its net

9   earnings were overstated.

10   **The Fiscal 2003 Form 10-K**

11       66.    On or about September 24, 2003, the Company filed its fiscal 2003 Form 10-K with

12   the SEC.  The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the public.

13   The fiscal 2003 Form 10-K included MIPS's fiscal 2003 financial statements which were materially

14   false and misleading and presented in violation of GAAP, due to improper accounting for the

15   backdated stock options.  As a result, MIPS's compensation expense was understated and its net

16   earnings were overstated.

17   **The Fiscal 2004 Form 10-K**

18       67.    On or about September 8, 2004, the Company filed its fiscal 2004 Form 10-K with

19   the SEC.  The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the public.

20   The fiscal 2004 Form 10-K included MIPS's fiscal 2004 financial statements which were materially

21   false and misleading and presented in violation of GAAP, due to improper accounting for the

22   backdated stock options.  As a result, MIPS's compensation expense was understated and its net

23   earnings were overstated.

24   **The Fiscal 2005 Form 10-K**

25       68.    On or about September 9, 2005, the Company filed its fiscal 2005 Form 10-K with

26   the SEC.  The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the public.

27   The fiscal 2005 Form 10-K included MIPS's fiscal 2005 financial statements which were materially

28   false and misleading and presented in violation of GAAP, due to improper accounting for the

1  backdated stock options.  As a result, MIPS's compensation expense was understated and its net

2  earnings were overstated.

**DEFENDANTS' SCHEME BEGINS TO UNRAVEL**

4        69.        The 1998-2005 Proxy Statements concealed Defendants' option backdating scheme.

5  Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when voting on

6  proxy proposals between 1998 and 2005.  In fact, it was not until the Company's announcement in

7  late August 2006 disclosing its ongoing internal probe that shareholders learned that the Proxy

8  Statements which they had relied upon for years were false and misleading.  Defendants have been

9  unjustly enriched at the expense of MIPS, which has received and will receive less money from the

10  Defendants when they exercise their options at prices substantially lower than they would have if the

11  options had not been backdated.

12        70.        Each dollar diverted to Defendants via the option backdating scheme has come at the

13  expense of the Company.  For example, if Bourgoin's 200,000 options granted in July 2000 had not

14  been manipulated, but rather had a strike price of $53.00 per share, which was the trading price only

15  two days after the options grant date, instead of the $36.50 per share strike price, which was the

16  trading low for the month, when Bourgoin exercised those options the Company would receive

17  $10.6 million instead of $7.3 million – *a cost to the Company of $3.3 million for this single*

18  *instance of option backdating*.

**THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT**

20        71.        Unlike most companies which avoid such option backdating abuse by issuing stock

21  option grants at the same time each year, which eliminates the potential for backdating, Defendants

22  ensured that executives would not have any such restrictions.  Given the many times MIPS's grants

23  were the low of the month in which options were granted, the date of their stock option grants was

24  clearly more than merely coincidental.

25        72.        As a result of the backdating of options, Defendants have been unjustly enriched at

26  the expense of MIPS, which has received and will receive less money from Defendants when they

27  exercise their options at prices substantially lower than they would have if the options had not been

28  backdated.

## TOLLING OF THE STATUTE OF LIMITATIONS

73. The Counts alleged herein are timely. As an initial matter, Defendants wrongfully concealed their manipulation of the stock option plans, through strategic timing and fraudulent backdating, by issuing false and misleading Proxy Statements, by falsely reassuring MIPS's public investors that MIPS's option grants were being administered by a committee of independent directors, and by failing to disclose that backdated options were, in fact, actually issued on dates other than those disclosed, and that strategically timed option grants were issued based on the manipulation of insider information that ensured that the true fair market value of the Company's stock was, in fact, higher than the publicly traded price on the date of the option grant.

74. MIPS's public investors had no reason to know of the Defendants' breaches of their fiduciary duties until late August 2006, when the Company announced that it would be delaying the filing of its 2006 10-K due to an ongoing internal investigation into the Company's past practices related to its stock option grants.

75. Finally, as fiduciaries of MIPS and its public shareholders, the Defendants cannot rely on any limitations defense where they withheld from MIPS's public shareholders the facts that give rise to the claims asserted herein, *i.e.,* that the MIPS Board had abdicated its fiduciary responsibilities to oversee the Company's executive compensation practices, and that the option grant dates had been manipulated to maximize the profit for the grant recipients and, accordingly, to maximize the costs for the Company.

### COUNT I

#### Violations of §14(a) of the Exchange Act Against
#### All Defendants

76. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

77. Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to

1   state any material fact necessary in order to make the statements therein not false or misleading." 17

2   C.F.R. §240.14a-9.

3       78.    The 1998-2005 Proxy Statements violated §14(a) and Rule 14a-9 because they

4   omitted material facts, including the fact that certain of the Defendants were causing MIPS to engage

5   in an option backdating scheme, a fact which Defendants were aware of and participated in from at

6   least 1998.

7       79.    In the exercise of reasonable care, Defendants should have known that the Proxy

8   Statements were materially false and misleading.

9       80.    The misrepresentations and omissions in the Proxy Statements were material to

10   plaintiff in voting on each Proxy Statement.  The Proxy Statements were an essential link in the

11   accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as

12   revelations of the truth would have immediately thwarted a continuation of shareholders'

13   endorsement of the directors' positions, the executive officers' compensation and the Company's

14   compensation policies.

15       81.    The Company was damaged as a result of the material misrepresentations and

16   omissions in the Proxy Statements.

17                        **COUNT II**

18                        **Accounting**

19       82.    Plaintiff incorporates by reference and realleges each and every allegation set forth

20   above, as though fully set forth herein.

21       83.    At all relevant times, Defendants, as directors and/or officers of MIPS, owed the

22   Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

23       84.    In breach of their fiduciary duties owed to MIPS and its shareholders, the Defendants

24   caused MIPS, among other things, to grant backdated stock options to themselves and/or certain

25   other officers and directors of MIPS and/or failed to properly investigate whether these grants had

26   been improperly made.  By this wrongdoing, the Defendants breached their fiduciary duties owed to

27   MIPS and its shareholders.

28

85.   The Defendants possess complete and unfettered control over the improperly issued stock option grants and the books and records of the Company concerning the details of such improperly backdated stock option grants to certain of the Defendants.

86.   As a result of Defendants' misconduct, MIPS has been substantially injured and damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those improperly granted options which have been exercised and sold.

87.   Plaintiff demands an accounting be made of all stock option grants made to any of the Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the value of the grants, the recipients of the grants, the exercise date of stock options granted to any of the Defendants, as well as the disposition of any proceeds received by any of the Defendants via sale or other exercise of backdated stock option grants received by those Defendants.

## COUNT III

### Breach of Fiduciary Duty and/or Aiding and Abetting
### Against All Defendants

88.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

89.   Each of the Defendants agreed to and did participate with Bourgoin, Eichler and Creighton, the other Defendants and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of fiduciary duties the Defendants owed to the Company.

90.   The Defendants have violated fiduciary duties of care, loyalty, candor and independence owed to MIPS and its public shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of MIPS and its shareholders.

91.   As demonstrated by the allegations above, Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to MIPS and its public shareholders, and they failed to disclose material information and/or made material misrepresentations to shareholders regarding Defendants' option backdating scheme.

92.     By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward MIPS and its public shareholders.

93.     As a proximate result of Defendants' conduct, in concert with Bourgoin, Eichler and Creighton, MIPS has been injured and is entitled to damages.

## COUNT IV

### Abuse of Control Against All Defendants

94.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

95.     The Defendants employed the alleged scheme for the purpose of maintaining and entrenching themselves in their positions of power, prestige and profit at, and control over, MIPS, and to continue to receive the substantial benefits, salaries and emoluments associated with their positions at MIPS.  As a part of this scheme, Defendants actively made and/or participated in the making of or aided and abetted the making of, misrepresentations regarding MIPS.

96.     Defendants' conduct constituted an abuse of their ability to control and influence MIPS.

97.     By reason of the foregoing, MIPS has been damaged.

## COUNT V

### Gross Mismanagement Against All Defendants

98.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

99.     Defendants had a duty to MIPS and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of MIPS.

100.    Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of MIPS in a manner consistent with the duties imposed upon them by law.  By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 28 -

1   and candor in the management and administration of MIPS's affairs and in the use and preservation

2   of MIPS's assets.

3         101.    During the course of the discharge of their duties, Defendants knew or recklessly

4   disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants

5   caused MIPS to engage in the scheme complained of herein which they knew had an unreasonable

6   risk of damage to MIPS, thus breaching their duties to the Company.  As a result, Defendants grossly

7   mismanaged MIPS.

8         102.    By reason of the foregoing, MIPS has been damaged.

9                                 **COUNT VI**

10                 **Constructive Fraud Against All Defendants**

11         103.    Plaintiff incorporates by reference and realleges each and every allegation set forth

12   above, as though fully set forth herein.

13         104.    As corporate fiduciaries, Defendants owed to MIPS and its shareholders a duty of

14   candor and full accurate disclosure regarding the true state of MIPS's business and assets and their

15   conduct with regard thereto.

16         105.    As a result of the conduct complained of, Defendants made, or aided and abetted the

17   making of, numerous misrepresentations to and/or concealed material facts from MIPS's

18   shareholders despite their duties to, *inter alia,* disclose the true facts regarding their stewardship of

19   MIPS.  Thus they have committed constructive fraud and violated their duty of candor.

20         106.    By reason of the foregoing, MIPS has been damaged.

21                                 **COUNT VII**

22                 **Corporate Waste Against All Defendants**

23         107.    Plaintiff incorporates by reference and realleges each and every allegation set forth

24   above, as though fully set forth herein.

25         108.    By failing to properly consider the interests of the Company and its public

26   shareholders, by failing to conduct proper supervision, and by giving away millions of dollars to

27   Defendants via the option backdating scheme, Defendants have caused MIPS to waste valuable

28   corporate assets.

1    109.    As a result of Defendants' corporate waste, they are liable to the Company.

2                                    **COUNT VIII**

3                    **Unjust Enrichment Against All Defendants**

4    110.    Plaintiff incorporates by reference and realleges each and every allegation set forth

5    above, as though fully set forth herein.

6    111.    As a result of the conduct described above, Defendants will be and have been unjustly

7    enriched at the expense of MIPS, in the form of unjustified salaries, benefits, bonuses, stock option

8    grants and other emoluments of office.

9    112.    All the payments and benefits provided to the Defendants were at the expense of

10   MIPS.  The Company received no benefit from these payments.  MIPS was damaged by such

11   payments.

12   113.    Certain of the Defendants sold MIPS stock for a profit during the period of deception,

13   misusing confidential non-public corporate information.  These Defendants should be required to

14   disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of MIPS. A

15   constructive trust for the benefit of the Company should be imposed thereon.

16                                    **COUNT IX**

17                  **Against the Officer Defendants for Rescission**

18   114.    Plaintiff incorporates by reference and realleges each and every allegation contained

19   above as though fully set forth herein.

20   115.    As a result of the acts alleged herein, the stock option contracts between Officer

21   Defendants and MIPS entered into during the relevant period were obtained through Defendants'

22   fraud, deceit, and abuse of control.  Further, the backdated stock options were illegal grants and thus

23   invalid as they were not authorized in accordance with the terms of the publicly filed contracts

24   regarding the Officer Defendants' employment agreements and the Company's stock option plan

25   which was also approved by MIPS shareholders and filed with the SEC.

26   116.    All contracts which provide for stock option grants between Officer Defendants and

27   MIPS and were entered into during the relevant period should, therefore, be rescinded, with all sums

28

paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

**COUNT X**

**Against the Insider Selling Defendants for Violation of
California Corporations Code §25402**

117.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

118.    At the time that the Insider Selling Defendants sold their MIPS common stock as set forth herein at ¶54, by reason of their high executive and/or directorial positions with MIPS, the Insider Selling Defendants had access to highly material information regarding the Company, including the information set forth herein regarding the true adverse facts of MIPS's improper accounting.

119.    At the time of such sales, that information was not generally available to the public or the securities markets. Had such information been generally available, it would have significantly reduced the market price of MIPS shares at that time.

120.    The Insider Selling Defendants, and each of them, had actual knowledge of material, adverse non-public information and thus sold their MIPS common stock in California in violation of California Corporations Code §25402.

121.    Pursuant to California Corporations Code §25502.5, the Insider Selling Defendants, and each of them, are liable to MIPS for damages in an amount up to three times the difference between the price at which MIPS common stock was sold by these defendants, and each of them, and the market value which that MIPS common stock would have had at the time of the sale if the information known to these defendants, and each of them, had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

**COUNT XI**

**Against the Insider Selling Defendants for Breach of Fiduciary
Duties for Insider Selling and Misappropriation of Information**

122.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

123.   At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold MIPS common stock on the basis of such information.

124.   The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects.   It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold MIPS common stock.

125.   At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated.   The Insider Selling Defendants' sales of MIPS common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

126.   Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.   Awarding money damages against all Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, to ensure Defendants do not participate therein or benefit thereby;

B.   Directing all Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and imposing a constructive trust thereon;

C.   Directing MIPS to take all necessary actions to reform and improve its corporate governance and internal control procedures to comply with applicable law, including, but not limited to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote adoption of the following Corporate Governance policies:

1          (i)      a proposal requiring that the office of CEO of MIPS and Chairman of the

2   MIPS Board of Directors be permanently held by separate individuals and that the Chairman of the

3   MIPS Board meets rigorous "independent" standards;

4          (ii)     a proposal to strengthen the MIPS Board's supervision of operations and

5   develop and implement procedures for greater shareholder input into the policies and guidelines of

6   the Board;

7          (iii)    appropriately test and then strengthen the internal audit and control function;

8          (iv)     rotate independent auditing firms every five years;

9          (v)      control and limit insider stock selling and the terms and timing of stock option

10  grants; and

11         (vi)     reform executive compensation.

12      D.      Ordering the imposition of a constructive trust over Defendants' stock options and

13  any proceeds derived therefrom;

14      E.      Awarding punitive damages;

15      F.      As to all improperly dated and/or improperly priced options that have been exercised,

16  ordering Defendants to make a payment to the Company in an amount equal to the difference

17  between the prices at which the options were exercised and the exercise prices the options should

18  have carried if they were priced at fair market value on the actual date of grant

19      G.      As to all improperly dated and/or improperly priced options that have been granted

20  but not yet exercised or expired, ordering the Company to rescind such options so they carry the

21  exercise prices they should have carried if they were priced at fair market value on the actual date of

22  grant;

23      H.      Awarding costs and disbursements of this action, including reasonable attorneys',

24  accountants', and experts' fees; and

25      I.      Granting such other and further relief as this Court may deem just and proper.

26

27

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 33 -

1

**JURY DEMAND**

2          Plaintiff demands a trial by jury.

3    DATED:  February 1, 2007                LERACH COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP
4                                            SHAWN A. WILLIAMS

5

6                                            _____
                                                    SHAWN A. WILLIAMS
7
                                             100 Pine Street, Suite 2600
8                                            San Francisco, CA  94111
                                             Telephone:  415/288-4545
9                                            415/288-4534 (fax)

10                                           LERACH COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP
11                                           WILLIAM S. LERACH
                                             DARREN J. ROBBINS
12                                           TRAVIS E. DOWNS III
                                             655 West Broadway, Suite 1900
13                                           San Diego, CA  92101-3301
                                             Telephone: 619/231-1058
14                                           619/231-7423 (fax)

15                                           Attorneys for Plaintiff

16   S:\CptDraft\Derivative\Cpt MIPS Technologies Derv.doc

17

18

19

20

21

22

23

24

25

26

27

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 34 -

1

### CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

2       Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3  named parties, there is no such interest to report.

4

5

6       _____
        ATTORNEY OF RECORD FOR PLAINTIFF
7       JOSEPH CARCO

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MIPS TECHNOLOGIES, INC. VERIFICATION

I, Joseph Carco, hereby verify that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATE: ___1 | 3 | 07___

_Joseph Carco_
SIGNATURE